Everyone is present and ready to argue in the first case, so we're ready to commence. Good morning, Your Honors. I represent the petitioner in this case. And we are asking the court to grant the petition for review and remand, excuse me, for reevaluation of his claim for withholding of removal. We submit that the Board of Immigration Appeals committed two related legal mistakes when evaluating his claim. First, they relied too much on general reports about conditions in Ghana when evaluating the specific individualized claims that he's making. And related to that legal mistake is they really evaluated the petitioner's claim as if he was saying that there's a general pattern and practice of persecution against individuals that are a member of a disfavored group that he's a member of, but that's not really what he claimed before the agency. The petitioner was claiming that his individual situation created a fear of persecution based on his individual specific situation. So the fact that general reports didn't specifically corroborate the specific aspects of his withholding claim. Doesn't that cause a problem if he's not a member of an identifiable group? I mean, if you're just talking about fears of an individual, then how is that different from, say, a person who feels that they are vulnerable to crime or to some misdeed that might occur to them when they go back? How does that differ? Sure. Well, what the petitioner was claiming is that he's a member of a few particular groups. A particular social group was the basis of the withholding claim, and one of them was that he is a successor to the throne of his particular tribe. So at that point, don't the country reports have some significance? If he's a member of tribal royalty, if you will, to show that there's violence, endemic violence there or something of that sort? Sure, but they do. The immigration judge and the BIA themselves admitted that the country reports do mention that there are specific instances. Excuse me. I don't understand because the BIA expressly did not go on the ground that he was not a member of a particular group. The IJ did, but the BIA didn't reach that issue. The BIA seemed to go on the question of whether he was in fact an heir. So I don't understand what you're arguing. It would seem to me that you should be arguing that the BIA did not pay attention to the finding of fact by the IJ that he was an heir and decided on a ground which was not the IJ's. The question that you and Judge Walker have been discussing is one on which the BIA might have affirmed perfectly well, but they didn't do it. I do agree. I was just attempting to answer the question, of course, because what our position is in the briefing is that, exactly like you said, Your Honor, because the BIA did not specifically address the issue of whether the claim persecution would be based on a membership in a particular social group. It might be a perfectly good argument, but it isn't before us because it isn't what the BIA held. Yes, and so what we're saying is if the court has issues with that, that the proper thing to do is to remand so that the BIA can actually adjudicate that aspect of the claim. There are several aspects about this case that are peculiar. One is this aspect. The other is credibility, which, you know, it's a mighty odd case. It's not clear to me that your client is credible. But, again, BIJ and their BIA, too, assumed credibility. So we're stuck with that. I do agree. I mean, I think one thing that sort of, you know, I didn't represent the petitioner below, but essentially what we're trying to raise is, you know, I certainly see why the judge and the BIA at first glance would think this is a bit of an odd arrangement, that the third son is the heir, that there's all these problems within the tribe. But I think this court and other federal courts have said that, you know, the rest of the world isn't like America, the rest of the world isn't a western country, and you kind of need to step back a little bit and evaluate it, not based on the sort of inherent point of view that someone who grows up in this culture would have. I'm still confused about your argument here. You're making the point that the BIA improperly relied on the country conditions reports and didn't find corroboration of your client's concerns, claims, about being the third son of the third person in line to inherit the leadership of the group. And I don't, you know, so you're just saying because he relied on that, that that was misguided. But what else was there to rely on? Just your client's say-so? No, and I think basically what... I mean, the letters were inconclusive. Well, I don't think so. I mean, well, that's not our position, Your Honor. So we cited in the brief, in the opening brief, just the pages in the reply brief, the actual full quotes, each of the affidavits specifically said the petitioner is the third-born son of the king. But I'm confused also about exactly what the argument is because I read the BIA as saying you didn't meet the burden of proof. This is a withholding claim. There was not a timely asylum claim. So you must establish, the petitioner had to establish a clear probability of future persecution. And that's where this claim fell apart, that you couldn't find in the country conditions report specific enough information about chieftaincy disputes to rely on the country conditions reports alone. And then the affidavits were very general. They don't specifically say that he was ever threatened by anyone who's identified. They don't identify the factions or people that are threatening them. They just convey vague, the vague statement that he will be in danger if he returns. So what, so how did, if that, if I'm right about, is that what the BIA did and what was the error in that? I think you're right about that that's what they did. I think what the mistake that they made is this court has said that a claim and the corroboration is only vague in the legal sense if it doesn't establish the elements of the withholding claim. And what we're saying is, and one of the things that the BIA specifically said is, the petitioner didn't establish that the third born sons are generally considered the heir to the tribe. And what we're saying is, well, we did provide evidence. We provided four affidavits specifically saying that in this specific tribe, the third born son is the heir and that the petitioner is the third born son. And past that, the BIA says, further, it does not establish that presumptive heirs are specifically third son, second son, whatever the presumptive heir is. They did not establish that the presumptive heirs are specifically targeted in chieftaincy disputes. And we're, you know.  Yeah, go ahead. So, again, the country reports do say that there are sporadic instances of violence against successors, but we're not saying and we don't need to show that there's a general widespread, you know, sort of epidemic of violence against successors. Are you saying that there is enough evidence that your client is the heir and that there is enough evidence that the heir is subject to persecution? Yes. The heir that actually the country reports suggest that. They may not suggest something about other things which are broader, but you're saying the IJ found that this guy is the heir because third born sons are that. And while the BIA had doubts about that, the BIA can't do that because the IJ is the finder of fact. And if he is the heir, there is enough evidence. And, in fact, the country reports support you in saying that there is prejudice against an heir. Yes, essentially what we're saying. What is the evidence then? Well, the evidence are the affidavits and essentially and the petitioner's testimony. What are the affidavits? Well, the affidavits specifically say that there have been. . . That the heir is subject to persecution. Well, the affidavits specifically say that the petitioner has been threatened by rivals within the tribe because they don't want him to be. . . Threatened with what? Threatened with violence, threatened with death. And specifically threatened with death. I didn't read that in the affidavits. I thought that there was concern. You know, it might be people don't like it. You'll find some people who disagree with you. And, you know, there could be resistance. But resistance can take different forms. Tell me about the specific threat against his life by a particular person that has been alleged in an affidavit. I do agree that they don't specifically name names per se, but they say that. . . No, but also violence, the particular kind of opposition, the nature of the opposition to him. I mean, if I'm. . . I mean, I just don't. . . It didn't seem specific at all to me. But I may be mistaken. Sure, so page 240 of the record. So I was tipped off by the same informant to be very careful on arrival in the town as they had planned to do away with my siblings and I. Now, I think a. . . Do away with, I would interpret as. . . Which affidavit is that? That's from your client, right? I believe that's from one of the brothers. But they. . . And correct me if I'm misunderstanding the record. None of the affidavits which I've read, maybe I'm misremembering them, they don't identify specific individuals or even the specific factions which pose a threat. There aren't specifics about what the nature of this dispute is. There aren't specifics about what the immense wealth that's alluded to in the letters, where it's, you know, specifics as to what it is and what form it is other than general references to land, minerals that are worth an immense amount of money. I think that's a fair assessment. And there are contradictory statements in the affidavit, perhaps not directly contradictory, but there are references to a number of different people having served or serving as regent. It's hard to take from the statements. And there may be some conflict with the petitioner's testimony as to who the regent is now. I'm not necessarily sure about that, but I think sort of the main thing that we've been saying is the BIA and the immigration judge never said we think these affidavits are incredible. They never say they're unreliable. And they don't rely on. . . You're absolutely right. They don't rely on consistencies. They rely on the fact that the letters are too general in nature to provide sufficient corroboration to bring you up to a preponderance. Sure, but, I mean, as I said, the affidavits specifically say he's been threatened. I'm not sure what, you know. . . There's no doubt that the BIA said that these are not definite enough. But the question is, did the BIA say it in a context of having found that it isn't . . . that he hasn't shown that he is the heir? And if the BIA erred in that particular, then its statements about these being too vague are not very helpful because the BIA, not us under Chenery, has to find that these are not vague. These are too vague, having found that he is the heir. And if they erred in that, then we have to send it back to the BIA to find if that is so. I think that . . . Oughtn't that to be your argument? Not whether they were too vague or not, but whether there was an error on the basis of which they found that. I believe that is correct, Your Honor. Okay, the standard we're applying here, right, is whether there was substantial evidence for the determination by the agency, correct? Well, what our position is, you only get to the substantial evidence question if the BIA properly applied the law when evaluating the evidence. I'm now talking about whether there is a clear probability of persecution, just generally speaking. Again, what our position is that that is the final stage. In order for us to reverse, don't we have to come to the conclusion that the evidence as set forth compels the opposite conclusion? I would disagree with that, Your Honor. I think you only need . . . You disagree with the statement of the issue by the government? Yes, I think you only need to do that if the BIA applied the law correctly and used the proper framework of analysis in understanding the evidence, and we're saying that they didn't. So you can't get to that question until the BIA properly applies the law first. There is no question that if the BIA finds something on the basis of proper evidence, we can only reverse if the BIA could not have done that. Judge Walker said, is the standard. Your argument has to be that there is an error on the starting point from which the BIA made that determination. I think that's correct, Your Honor, yes. Thank you. May it please the Court. I'm Christina Greer on behalf of the United States Attorney General. There appear to be two issues in this case. The first is which standard of review applies, and the second is whether the petitioner has met his burden under that standard of review. As to the first issue, this is under substantial evidence standard of review because the question is a factual one. Whether petitioner submitted sufficient corroboration to establish that it's more likely than not that he will be persecuted upon returning to Ghana as the third son of his father who will inherit his father's stool and immense wealth, and that because of jockeying within the family or the tribe, he will be at risk of danger. Petitioner did not meet that standard. Under that standard, he has to show that the record compels the conclusion. No one doubts that he has to compel the opposite conclusion. My question is, did the BIA ignore the IJ's finding that as the third-born son, he would be the heir? And on the basis of that reversal by the BIA in effect of what the IJ conceded, credibility and that, it then found that there was not enough evidence of danger. And if it did that, then don't we have to send it back to the BIA to find whether on the basis of the facts that were found that as the third-born son, he is the heir, he is not in danger. That is, if there is an error, we cannot under Chenery affirm unless it would be futile. And I don't see how we can say it's futile because there is some evidence on which the BIA might find that he is in danger if he is in fact the third-born son and heir. Your Honor, I read the IJ's decision differently. It states that he claims that as the third son of his father, he is legally the heir, although the court did not see any articles to corroborate that statement. The immigration judge actually even stated that didn't quite find corroboration for that statement, and that's page 7 of the immigration judge's decision. I'm sorry, I don't actually have the record site in front of me. But relying upon that, the board stated that. But the IJ said under the finding of whether he was a member of a group or not, they said he is the third-born son and therefore heir, but nonetheless, he is not being discriminated against or in danger as part of a social group. And it's at that point that they made that finding. Now then the BIA, instead of going on the ground that he's not a part of a group that is protected, that he's being tried for another reason, said we don't discuss that. But the IJ, in that section of its opinion, treated the evidence that he had brought as sufficient that he was the heir. And that's generally how it happens when it comes to making alternate findings, because the corroboration finding is independently dispositive of the case. And so in order to make a separate finding on nexus or on particular social group, generally immigrants Is your argument, do I understand your argument to be that the IJ, though it found that in the second part of its holding, didn't find that for the first part of its holding? Well, my argument is that in the first part, it did not find that as a fact. But in the second part, it's assuming that what he said is true. And then seeing if nexus and particular social group are established. And they assumed credibility throughout, which is the most dubious with respect to your opponent, the most dubious part of this whole case at all. They did assume credibility. And that could have been for many different reasons. For example, because these were sufficient. And as the board and the immigration or the board and the attorney general have stated. Let me ask you this. Yes. If we find on reading the IJ's finding that the IJ actually found that as the third born son, he is the heir. If we find that, which you don't concede. But if we find that, then do you concede that the BIA then erred in finding that he was not the heir? That is, that it didn't do what the BIA must do when it rejects an IJ's finding. I don't think so. Because in my opinion, this board decision doesn't state that he's not the heir. It just states what. No, no. You misunderstand me. I said if, oh, that the BIA didn't say that he wasn't the heir. I'm sorry. I may have misheard you. Yes. I read this as stating not that the BIA stated that he's not the heir, just that what the board said or what the IJ said. The country conditions evidence does not indicate that third sons are presumptive heirs, which is what the IJ said when considering the corroborative evidence. Okay. The IJ, just to make sure, you referred to page 7 of the IJ's opinion, which I think is page 40 in our appendix as the page of the IJ's treatment of this issue. And your argument is you're referencing us to the first paragraph of that decision where respondent claims that as the third son of his father, he is legally the heir. That sentence begins with respondent claims. And respondent indicates what happens to the third sons, and then respondent maintains his father told him that he should leave. And there's no finding there. It's just setting out the claims. Yes, Your Honor. And in the second line of that paragraph, while it doesn't come to any findings, it does state that he claims that as the third son of his father, he's legally the heir, although the court did not see any articles to corroborate that statement. And that's precisely what the board reiterated in its decision when it stated that the country conditions evidence does not indicate that third sons are presumptive heirs to royal positions. So in my opinion, the board reiterated or just copied what the immigration judge said with a little bit of paraphrasing. And both of them said the court does not find sufficient evidence to show that presumptive heirs are in danger, specifically. That's what the IJ said. And then the board said on top of that, country evidence does not indicate that third sons are presumptive. I'm sorry, later on. Further, it does not establish, the country conditions do not establish that presumptive heirs are specifically targeted in chieftain disputes. Yes, Your Honor. So you don't, essentially you're saying that they are consistent. Yes. So the two decisions, the board is reiterating what the, or finding for the same reasons as the IJ, that the petitioner did not sufficiently corroborate his claim. And here, there's some consternation, or there's some disagreement about the role that the implausibilities and inconsistencies in the affidavits or letters, as they don't appear to be affidavits. The letters provide inconsistent information or are inconsistent with prior letters from the same persons. But they are, in fact, general in nature. So the argument that the government is making is that by looking at the record as it is, the record does not compel the conclusion that petitioner has established it's more likely than not that he will be persecuted in Ghana. And one of the reasons is because just looking at the record as it is, the letters are highly inconsistent. If he, if we were to find that there was error in not finding him to be the heir, and I'm not saying we would, but if we were to find that, is there enough evidence in the record that an actual, and in that, with the support of the State Department country findings, that an heir is in danger? Is there enough evidence of that? That is, if we can conclude that there was error in not finding him to be the heir, which is by no means clear, then is there enough evidence to say that as an heir, he is in danger? There's not, Your Honor. The country conditions reports refer to chieftaincy disputes and a chief who has died, but they don't refer to issues with presumptive heirs. And then his letters are very general. For example, the letter from his brother talks about threats, says that his brother is likely to be murdered in the event of him taking up his role as chief. But it doesn't say from who. It says that the position is currently held by a 75-year-old man and is being challenged. And the current political situation does not augur well for my brother. And then, I apologize, Your Honors, I see that I'm almost out of time. May I finish this one? The family lawyer says, due to complications and relations among the family, petitioner is in danger. Still, does not say from who, by whom, what that danger is. There's a risk of malicious intent and threat to his life arising from the factionalism among his kingsmen. Again, it doesn't state from who. Doesn't that all go, don't all those things go to whether there is a danger because he is part of a group rather than the question of whether he is in danger? That is, again, had the BIA said there is a suggestion of danger, but that danger may be because of individual matters with respect to him, not because of he's in a particular group. The second finding by the AIJ, then I'd have no problem at all. My question isn't whether the BIA could come out the way it did. I have no doubt that the BIA could come out the way it did. My question is, did they come out on that basis, or is it something that, given Chenery, which doesn't allow us to affirm, as we would a district court, we shouldn't send it back to the BIA to do its job? And what I'm saying is that the board did properly find that between the country conditions reports and these affidavits, there's just not enough there. He has to show it's more likely than not that he will be persecuted, that from an objective, reasonable person standard, that he will be subjected to persecution, and he did not show that based on the general statements within the letters. So this is not an asylum situation. It's a withholding situation with a higher standard of proof. Yes, Your Honor. If there are no further questions, thank you. So I did just want to bring up a few points. I believe one of the questions that Your Honor had basically been saying is if we do find, is if the court finds that the BIA made a mistake on whether he's an heir, if they remand, is there enough evidence that a reasonable adjudicator could approve the case? And I think that there is, and page 232 of the record, which is a State Department report on conditions, specifically says that there are disputes because of lack of clear succession. That doesn't mean that we would find, if we were finding de novo, that the evidence would come out that way. What you're saying is the BIA might find that, even if we wouldn't. Yes, that a reasonable adjudicator looking at this evidence could say, because the State Department says that there are fights in tribes that result in death because of lack of clear succession, that a reasonable fact finder could say that the petitioner, in his particular circumstance, meets his burden of proof. And I did find, so on page 239, one of the letters says that the petitioner . . . Yes, which we would agree with Your Honor that the IJ essentially believed that the petitioner was the heir, but said that for other legal reasons, I don't think he's met his burden of proof. But the BIA specifically said in their decision, we don't think that he is the heir because the reports don't say that the third son is the heir. I'm sorry, but then there's an alternative holding, right? After that, further, it does not establish that presumptive heirs are specifically targeted. So at that point, the BIA is focused on the fact that he could be the heir. Otherwise, it wouldn't have to make that statement, right? They say that the country condition evidence does not establish that presumptive heirs are specifically targeted in chieftaincy disputes. Yes, but I don't think that that's necessarily relevant in this case. The petitioner isn't saying every heir is targeted. He's saying that he's targeted because he's an heir. And the State Department specifically says that there are deaths and injuries as a result of succession disputes within tribes. So even if there's a hundred tribes and only two of them have fights that result in harm, if the petitioner is one of those two out of a hundred, he can meet his burden of proof. And it doesn't matter that in the other 98 tribes, the succession is resolved peacefully. Thank you, Your Honors. Thank you, Bex. Very well argued.